# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Ansel Tirrell Commander, | ) | |
| | ) | |
| Plaintiff, | ) | C/A No. 5:19-cv-02411-MBS |
| | ) | |
| v. | ) | |
| | ) | **OPINION AND ORDER** |
| Andrew Saul, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

On August 26, 2019, Plaintiff Ansel Tirrell Commander ("Plaintiff") filed the within action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of Defendant Commissioner of Social Security (the "Commissioner") denying his claim for Supplemental Security Income Benefits ("SSI").

## BACKGROUND

Plaintiff first filed his SSI application on September 16, 2013, alleging disability beginning September 13, 2013, as a result of sarcoidosis and sickle cell disease. Plaintiff's application was denied initially and again upon reconsideration. An Administrative Law Judge ("ALJ") presided over a hearing held on December 17, 2015. The ALJ issued an unfavorable decision on February 2, 2016. He determined that Plaintiff has severe impairments of sarcoidosis and sickle cell disease. Tr. 12. However, he found that while these impairments "could reasonably be expected to cause a few of the alleged symptoms[,] . . . [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." Tr. 14. Thus, the ALJ concluded that Plaintiff was not under a disability within the meaning of the Social

Security Act. Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied. Plaintiff thereafter appealed the decision to this court. The Commissioner filed a motion to remand, which the court granted in an order dated May 11, 2018. *Commander v. Berryhill*, 5:17-2114-PMD-KDW, ECF No. 19 (D.S.C. May 11, 2018).

The ALJ held a second hearing on May 9, 2019 and issued an unfavorable decision on June 25, 2019. He again determined that Plaintiff has severe impairments of sarcoidosis and sickle cell disease, Tr. 510, but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ," Tr. 511. Thus, the ALJ concluded that Plaintiff is not under a disability within the meaning of the Social Security Act and again denied the claim.[1]

On April 6, 2020, Plaintiff filed his brief challenging the ALJ's decision on the basis that the ALJ failed to consider all of the medical evidence in determining his residual functional capacity ("RFC"). ECF No. 17. Plaintiff contends specifically that the ALJ failed to "give appropriate weight to the nature of [his] recognized impairments: Sarcoidosis and sickle cell anemia, and the limitations caused by these conditions." *Id.* at 13. The Commissioner filed his response to Plaintiff's brief on May 14, 2020. ECF No. 19.

---

[1] In both decisions the ALJ noted Plaintiff's alleged disability date as October 1, 2012, however, Plaintiff stated a disability date of September 13, 2013 on his SSI application. Tr. 155.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02 (D.S.C.), this matter was referred to United States Magistrate Judge Kaymani D. West for a Report and Recommendation ("Report").  On September 16, 2020, the Magistrate Judge filed her Report recommending that the court affirm the Commissioner's decision to deny benefits.  ECF No. 23.  The Magistrate Judge found that the ALJ "thoroughly considered the medical evidence," and that "substantial evidence supports the ALJ's RFC determination."  *Id.* at 16-17.  Plaintiff filed objections to the Report on September 25, 2020, ECF No. 25, to which the Commissioner responded on October 2, 2020, ECF No. 28.

This matter is now before the court for review of the Magistrate Judge's Report.  The court is charged with making a *de novo* determination of any portions of the Report to which a specific objection is made.  The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28. U.S.C. § 636(b).

## STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner.  *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).  The court must uphold

3

the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

The Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). However, the Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## APPLICABLE LAW

Under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83(c), SSI benefits are available to an individual who is financially eligible, files an application for SSI, and is disabled as defined in the Act. 42 U.S.C. § 1382. An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least twelve consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

The Commissioner has developed the following five-step evaluation process for determining whether a claimant is disabled under the Act: (1) whether the claimant engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable impairment; (3) whether the impairment meets or equals the severity of an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from participating in substantial gainful employment. 20 C.F.R. § 416.920(a)(4)(i)-(v). Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). At step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Id.* If at any step of the evaluation the ALJ finds that the individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

## DISCUSSION

Plaintiff was born in 1977 and was 36 years old as of his alleged disability onset date. Tr. 172. He has a high school education and past relevant work experience as a cook, laborer, maintenance worker, painter, and salesperson. Tr. 177. Plaintiff alleges disability resulting from his condition of sarcoidosis, an autoimmune disease, and from sickle cell disease.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since September 16, 2013, the date of Plaintiff's application. The ALJ found that Plaintiff

suffers from severe impairments of sarcoidosis and sickle cell disease; but found that Plaintiff does not suffer from an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. With respect to RFC, the ALJ determined that Plaintiff has the capacity to perform light work as defined in 20 C.F.R. § 416.967(b), with certain exceptions; and, considering Plaintiff's age, education, work experience, and RFC, a significant number of jobs exist in the national economy that Plaintiff can perform. Tr. 507-515. Accordingly, the ALJ determined that Plaintiff is not disabled.

Plaintiff contends the ALJ in fashioning the RFC failed to give appropriate weight to the limitations caused by sarcoidosis and sickle cell disease and objects to the Magistrate Judge's finding that the RFC is supported by substantial evidence. ECF No. 25 at 1. The Commissioner responds that Plaintiff merely rehashes the arguments raised in his opening brief and asserts that the Magistrate Judge correctly found that the RFC is supported by substantial evidence. ECF No. 28 at 2.

Social Security Ruling 96-8p provides the following guidance in assessing a claimant's RFC:

> Ordinarily, RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*.

SSR 96-8p, 1996 WL 374184, at *2 (Jul. 2, 1996) (emphasis in original).

Under the governing regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig v. Chater*, 76 F.3d 585,

6

594 (4th Cir. 1996).  *See* 20 C.F.R. § 416.929.  The first step requires a finding of objective medical evidence showing "the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged."  *Id.*  After a claimant has met this threshold showing, the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work."  *Id.* at 595.  "The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects."  *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017).  The Fourth Circuit has provided the following guidance:

> [T]his evaluation must take into account not only the claimant's statements about her pain but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings . . . ; any objective medical evidence of pain . . . and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it . . . .

*Craig*, 76 F.3d at 594; *see* 20 C.F.R. § 416.929(c).

The Magistrate Judge determined that the ALJ's RFC assessment is supported by substantial evidence and observed that "the ALJ thoroughly considered Plaintiff's entire medical history, starting with his diagnosis of sarcoidosis and sickle cell disease."  ECF No. 23 at 11.  Indeed, the hearing decision reflects that the ALJ considered Plaintiff's medical treatment history, beginning with Plaintiff's hospitalization in 2013 for acute hypoxic respiratory failure, pneumonia, hypoxia, sarcoidosis, and status post bronchoscopy.  Tr. 512.  The ALJ made the following observations.  Records from follow-up appointments showed unremarkable results for respiratory and sickle cell

7

examinations. *Id.* Plaintiff was hospitalized in September 2017 for shortness of breath and chest pain and was diagnosed with pneumonitis/bronchitis, systemic inflammatory response syndrome, sarcoidosis, and sickle cell trait with chronic anemia; chest x-rays showed chronic pulmonary scarring but no acute changes; he was experiencing no respiratory symptoms at time of discharge; and, by January 2018, Plaintiff reported he was working and very happy about his job. Tr. 513. In March 2018, Plaintiff reported that his condition had worsened and that he had a pain crisis involving his left shoulder; he was diagnosed with sickle cell disease without crisis. *Id.* Finally, the ALJ observed that Plaintiff sought treatment for chronic pain syndrome between June 2018 and January 2019, but noted "there was no detailed physical examinations, and no mention of pain crisis." *Id.* Throughout the ALJ's discussion of Plaintiff's medical records, he commented on Plaintiff's use of opioids to alleviate pain, the decision of treating physician Dr. Daniels to discontinue Plaintiff's use of opioids, and Plaintiff's noncompliance with respect to using the medication hydrea, which "would have lessened [Plaintiff's] need for opioids." Tr. 513. The ALJ concluded as follows:

> There is evidence of an impairment that could reasonably [be] expect[ed] to cause sickle cell crises. However, there continues to be no objective evidence supporting the frequency of crises alleged by the claimant. The claimant has had two hospitalizations for pneumonia but no physician has related those two occurrences with the claimant's underlying impairments. The continuing taking of opiate medication when not in crisis supports the conclusion that there is medication seeking behavior. The claimant indicated limited ability to stand/walk with no objective basis for that limitation [i]f the claimant is not in crisis. When questioned at the hearing about taking opiates when not in crisis, the claimant indicated that he was also [in] pain once or twice per week for unknown cause. The claimant testified that he stopped seeing Dr. Daniels because the claimant did not take prescribed folic acid. However, the last note from Dr. Daniels indicates that the claimant was refused a higher dose of oxycodone, and thus the claimant no longer sought treatment from Dr. Daniels. The evidence strongly suggests medication-seeking behavior. The claimant

8

stopped seeing Dr. Daniels when he would not increase opiate levels. The claimant then found Dr. Rashford and traveled to Charleston on a monthly basis for medication.

Tr. 513-514.

Plaintiff contends that the symptoms of which he complains, "shortness of breath, aching and pain throughout his body, blistering on his feet, frequent lung infections, muscle and joint pain, and fatigue, even when not in crisis," are symptoms "not readily apparent upon a doctor's examination," and that the ALJ improperly discredited his allegations upon a finding that Plaintiff had displayed "drug-seeking behavior." ECF No. 25 at 3. Plaintiff asserts that his diagnosed medical conditions are known to cause long-term chronic and acute pain, which is treated with "opiate pain medication." *Id.* at 4. Plaintiff posits that the ALJ determined his allegations of pain were unsupported based on bias caused by Plaintiff's drug use.

The Fourth Circuit has noted that sickle cell disease, also known as sickle cell anemia, "is a blood disorder that principally afflicts individuals of African and Indian descent," and which "leaves its victims easily fatigued and often suffering from episodes of acute pain." *Hines v. Barnhart*, 453 F.3d 559, 560 (4th Cir. 2006). Sickle cell disease "is particularly insidious because it rarely produces the objective medical evidence that clinicians desire." *Id.* In fact,

> [p]atient[s] with [sickle cell disease] . . . are in an almost uniquely disadvantaged position from the point of view of pain management. The condition is life threatening at times, yet patients are healthy between sickling episodes. Some individuals are affected by painful episodes much more than others, and pain is often the only or main symptom of an acute episode of illness.

*Id.* (quoting James Elander & Kenny Midence, *A Review of Evidence About Factors Affecting Quality of Pain Management in Sickle Cell Disease,* 12(3) The Clinical J. of

9

Pain 180–93 (Sept. 1996)). In affirming the district court's decision to reverse the Commissioner's finding of no disability, the Fourth Circuit in *Hines* concluded that the ALJ applied an incorrect legal standard when it required objective evidence of the plaintiff's pain. *Hines*, 453 F.3d at 563-64. Specifically, the court instructed, upon finding objective medical evidence of some condition that could reasonably produce the pain, i.e., sickle cell disease, the ALJ erred in requiring "objective evidence of the pain itself or its intensity." *Id.* at 564. *See Arakas v. Commissioner*, 983 F.3d 83, 95, 96 (4th Cir. 2020) (holding ALJ erred in discounting complaints of pain caused by fibromyalgia as inconsistent with objective medical evidence).

Similarly, the ALJ erred here in relying solely on a lack of objective corroborating evidence of Plaintiff's allegations of pain to find he is capable of light work. Having met the "threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [Plaintiff] was entitled to rely exclusively on subjective evidence to prove the second part of the test, *i.e.*, that his pain is so continuous and/or so severe that it prevents him from working a full eight hour day." *Hines*, 453 F.3d at 565.

Plaintiff testified that sarcoidosis causes blistering or callouses on his feet, as well as arthritis, and renders him susceptible to pneumonia, for which he is hospitalized every other year. Plaintiff testified that with sickle cell disease, he becomes "less sick than a person that has the full . . . sickle cell," but that pain attacks triggered by his condition cause him to be hospitalized once or twice a year. Tr. 527. He testified that the sickle cell pain crises occur every three to four months and last between one and two weeks. In response to the ALJ's questions, Plaintiff explained that during a pain crisis he

10

experiences pain in his muscles and joints, "[l]ike my blood cells become irregular shaped, and cause blockage, which is like a blood clot, and it's very painful," and that when he is not experiencing a pain crisis, he feels "all right . . . fatigued."  Tr. 528. Plaintiff testified that he had recently worked at an automobile plant as an industrial cleaner and was let go after two and a half months because "[he] was in and out of work for [his] sickness."  Tr. 526.  While the ALJ noted this testimony in his hearing decision, it is not clear that he took it into consideration as subjective evidence of Plaintiff's allegations of pain.  Rather, the ALJ focused on what he characterized as Plaintiff's drug seeking behavior:

> Based on the medical evidence, the undersigned finds there is evidence of an impairment that could reasonably [sic] expect to cause sickle cell crises. However, there continues to be no objective evidence supporting the frequency of crises alleged by the claimant.  The claimant has had two hospitalizations for pneumonia, but no physician has related those two occurrences with the claimant's underlying impairments.  The continuing taking of opiate medication when not in crisis supports the conclusion that there is medication-seeking behavior.

Tr. 513.

However, as Plaintiff notes in his objection, the opiate medication he sought is the very medication prescribed to alleviate his symptoms of pain.  It is possible that both scenarios are true: Plaintiff's pain is as acute and regular as he alleges; and he is addicted to and abuses the opiate medication prescribed to help manage the pain.[2]  The ALJ is not required to accept a claimant's allegations of pain to the extent they are inconsistent with the available evidence; however, a "claimant's allegations about her pain may not be

---

[2] The court notes that Plaintiff's treating physician, Dr. Daniels, opined that Plaintiff is "disabled and unable to work," as a result of sarcoidosis, which opinion the ALJ gave no weight. Tr. 514.  The ALJ's treatment of Dr. Daniels's opinion is not before the court.

11

discredited solely because they are not substantiated by objective evidence of the pain itself or its severity." *Hines*, 453 F.3d at 565 n.3 (quoting *Craig*, 76 F.3d at 595). Additionally, the ALJ must determine whether a claimant is disabled notwithstanding the claimant's suspected substance dependency or abuse. 20 C.F.R. § 416.935. A claimant's history of drug addiction does not on its own disqualify the individual for benefits. *Id.* And to the extent the ALJ finds the claimant less credible as a result of any dependency or abuse, the ALJ should explain his or her reasoning and findings.

It is unclear from the hearing decision whether the ALJ took into consideration the subjective evidence of Plaintiff's alleged pain, or rather relied exclusively on a lack of objective evidence and what he perceived as a drug addiction and/or drug seeking behavior to reach his decision of no disability. Accordingly, the court finds that the ALJ applied an improper legal standard and therefore will remand for reconsideration.

The court declines to adopt the Report and Recommendation, ECF No. 23, for the reasons stated herein. The Commissioner's final decision of no disability is **REMANDED.**

**IT IS SO ORDERED.**

/s/Margaret B. Seymour\
Margaret B. Seymour\
Senior United States District Judge

March 8, 2021\
Columbia, South Carolina